**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADALBERTO CASTRO-DIAZ and | : Civil Action No.  11-00181 |
| AMPARO HERNANDEZ and NEBREYLKA | : |
| CASTRO, a Minor by her Parents and Natural | : |
| Guardians, ADALBERTO CASTRO-DIAZ | : |
| And AMPARO HERNANDEZ | : |
| | : |
| vs. | : |
| | : |
| KEVIN KOVALOVSKY and BOROUGH | : |
| OF FREEMANSBURG | : |

## ORDER

AND NOW, this            day of                          , 2012 , upon consideration

of the Motions for Summary Judgment of Defendants, Kevin Kovalovsky & the Borough of

Freemansburg, and any Response thereto, it is hereby **ORDERED** and **DECREED:**

1. Defendants' December 2, 2011 Motion for Summary Judgment (Docket #27) and

   Statement of Material Undisputed Fact in Support (Docket #28) are **DISMISSED**

   **AS MOOT.**

2. Defendants' Motion for Summary Judgment submitted consistent with the Court's

   January 12, 2012 Order, is **GRANTED.**  Plaintiff's Complaint is **DISMISSED**

   **WITH PREJUDICE.**


BY THE COURT:


_____

                                                                    J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ADALBERTO CASTRO-DIAZ and      : Civil Action No.  11-00181
AMPARO HERNANDEZ and NEBREYLKA   :
CASTRO, a Minor by her Parents and Natural   :
Guardians, ADALBERTO CASTRO-DIAZ   :
And AMPARO HERNANDEZ      :
                             :
           vs.               :
                             :
KEVIN KOVALOVSKY and BOROUGH   :
OF FREEMANSBURG             :

<u>**DEFENDANTS, MOTION FOR SUMMARY JUDGMENT PURSUANT TO
FED.R.CIV.P. 56**</u>

Defendants, Kevin Kovalovsky and the Borough of Freemansburg, by and through their

undersigned counsel, Marshall, Dennehey, Warner, Coleman & Goggin and Christopher Boyle,

Sr., Esquire, file this Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 and aver:

1.   Plaintiff instituted this action by filing a Complaint in the Court of Common Pleas of

Northampton County, which was removed to the U.S. District Court for the Eastern District of

Pennsylvania on or about January 10, 2011.  (Exhibit "A").

2.   Plaintiffs' Complaint alleges violation of their civil rights pursuant to 42 U.S.C.

§1983 under the Fourth Amendment, and pendent state tort claims of intentional torts and

violation of constitutional rights under the Pennsylvania Constitution.

3.   On September 12, 2011, the Court granted the Petition of Plaintiff's counsel to

withdraw. (Docket #24)

4.   On September 16, 2011, the Court placed this matter in civil suspense for sixty (60)

days, and directed the Plaintiffs to retain new counsel, or proceed pro se.   (Docket #26)

5.   On December 2, 2011, Defendants filed a Motion for Summary Judgment,

Memorandum of Law and Statement of Material Undisputed fact, in support. (Docket #27-28)

6.   On January 12, 2012, the Court entered an Order setting a March 12, 2012 discovery deadline, and an April 20, 2012 deadline for dispositive motions. (Docket #29)

7.   Documents sent to the last known residence of the Plaintiffs have been returned as undeliverable.

8.   Plaintiffs have engaged in no further discovery efforts since the Court's January 12, 2012 Order.

9.   This timely Motion for Summary Judgment, follows.

10. For the reasons set forth in the Memorandum of Law, which is attached hereto and incorporated herein by reference, Plaintiffs' Complaint, should be dismissed with prejudice.

WHEREFORE, Defendants, Kevin Kovalovsky and the Borough of Freemansburg, respectfully request this Honorable Court dismiss Plaintiffs' Complaint with prejudice.


MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN


BY:   s/Christopher Boyle, Sr.
CHRISTOPHER BOYLE, SR., ESQUIRE
ID#  PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email:  cpboyle@mdwcg.com
Attorney for Defendants


DATE: 3/13/12

26/1810942.v1

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ADALBERTO CASTRO-DIAZ and : Civil Action No.  11-00181
AMPARO HERNANDEZ and NEBREYLKA :
CASTRO, a Minor by her Parents and Natural :
Guardians, ADALBERTO CASTRO-DIAZ :
And AMPARO HERNANDEZ :
:
vs. :
:
KEVIN KOVALOVSKY and BOROUGH :
OF FREEMANSBURG :

<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56</u>

**I.      INTRODUCTION**

"A genuine issue of material fact is not created where the only issue of fact is to

determine which of the conflicting versions of the plaintiff's testimony is correct." <u>Barwick v</u>

<u>Celotex Corp.</u>, 736 F. 2d 946, 960 (4th Cir. 1984); See also: <u>Cleveland v. Policy Mgmt. Sys.</u>

<u>Corp.</u>, 526 U.S. 795  (1999); <u>Hackman v Valley Fair</u>, 932 F.2d 239,241 (3d Cir. 1991).  While

the Court's procedures calls for the moving party to draw the Court's attention to undisputed

facts, such a task is difficult where a plaintiff has told conflicting tales, and all of the evidence

points toward an unsupportable Complaint.

What is indisputable in this case, is that on a rainy morning of May 16, 2008, Police

Officer Kevin Kovalovsky of the Freemansburg Police Department stopped Adalberto Castro-

Diaz, and an unidentified female companion, and cited Castro-Diaz for Motor Vehicle Code

violations.  The citation, computer recorded history of the event, and the police report prepared,

all establish that the stop was uneventful, and occurred on May 16, 2008.  Plaintiffs' false

assertions to the contrary, are wholly unsupported, in fact, they are completely debunked by the record.

## II.    FACTUAL AND PROCEDURAL BACKGROUND [1]

Plaintiff instituted this action by filing a Complaint in the Court of Common Pleas of Northampton County, which was removed to the United States District Court for the Eastern District of Pennsylvania on or about January 10, 2011.  (Exhibit "A).  On September 12, 2011, the Court granted the Petition of Plaintiff's counsel to withdraw. (Docket #24)  On September 16, 2011, the Court placed this matter in civil suspense for sixty (60) days, and directed the Plaintiffs to retain new counsel, or proceed pro se.   (Docket #26)  On December 2, 2011, Defendants filed a Motion for Summary Judgment, Memorandum of Law and Statement of Material Undisputed fact, in support. (Docket #27-28)  On January 12, 2012, the Court entered an Order setting a March 12, 2012 discovery deadline, and an April 20, 2012 deadline for dispositive motions. (Docket #29)  Documents sent to the last known residence of the Plaintiffs have been returned as undeliverable.  Plaintiffs have engaged in no further discovery efforts since the Court's January 12, 2012 Order.

Plaintiff's Complaint alleges that on July 25, 2008, they were stopped by Police Officer Kevin Kovalovsky of the Freemansburg Police Department, in violation of their rights.  (Exhibit "A").  They bring state and federal claims against both Defendants.

Attached to Defendants' Statement of Material Undisputed Fact are:

- the police reports of the stop Adalberto Castro-Diaz and his female companion;

---

[1] Defendants incorporate by reference their Statement of Material Undisputed Fact, filed contemporaneously with this Motion for Summary Judgment, repeating such facts only as necessary for clarity of argument.

- Officer Kevin Kovalovsky's May 16, 2008 patrol log;

- Northampton County 911 Center printout for the stop on May 16, 2008; and

- the Commonwealth of Pennsylvania Department of Transportation driver's license report, indicating no license for Plaintiff, Adalberto Castro-Diaz.

From these documents, it is clear that on May 16, 2008, Mr. Castro-Diaz was travelling at approximately 60 mph in a 45 mph speed zone, during a rainstorm.  (Id.).  Plaintiff's female companion informed the officer that she was the daughter of the vehicle's owner, Israel Espinosa. (Id.).  The woman translated for Mr. Castro-Diaz, who "does not speak English".  (Id.).  Officer Kovalovsky ran the operator's information through the county computer and found that he had neither warrants, nor a valid driver's license.  (Id.).

Thereafter, he issued Mr. Castro-Diaz a citation for driving without a license.  (Id.).  The citation was supported by correspondence from Janet Dolan, the Director of the Bureau of Driver Licensing for the Secretary of Transportation, advising that Castro-Diaz had no driver's license. (Id.).  Officer Kovalovsky's patrol log, and the citation itself, time-stamped by the District Court, also evince that the stop occurred on May 16, 2008.  (Id.)  While Plaintiffs have testified that they were only stopped on one occasion by Officer Kovalovsky, they nonetheless submit that the stop occurred on July 25, 2008.  (Exhibit "A").  In support, they offer a tow receipt for a 1986 Nissan pickup truck.  (Exhibit "C").  What they fail to mention, is that when Adalberto Castro-Diaz was stopped by Officer Kovalovsky, he was operating a Toyota pickup truck, not a Nissan. (Exhibit "B").  Plaintiffs' deception becomes further evident, when one considers the June 3, 2008 auto accident he was involved in, this time in a different Nissan, model year 1989.  (Exhibit "D").

While Plaintiff Castro-Diaz has claimed that damage was done to his truck in an auto accident where he was run off the road by the police, documents adduced in discovery reveal that it was actually an accident involving a parked unoccupied vehicle, in a different jurisdiction. (Exhibit "D")  Finally, as pointed out in Defendants' Statement of Material Undisputed Fact, the only relatively unbiased witness in this matter, Gertrudis Espinosa, brother to the owner of the first of three trucks operated by Plaintiff, points out that the officer involved in a later stop was approximately 5'3", while Officer Kovalovsky is over 6' tall.  (SUF at  36-37).   Given the indisputable evidence of record, including the time-stamped motor vehicle code violation, May 16, 2008 police report and County 911 report, and the testimony of record in this matter, it is apparent that Plaintiff, Adalberto Castro-Diaz was stopped on May 16, 2008, and claims of the Plaintiffs in this matter are time-barred.

**III.     ALLEGATIONS OF THE COMPLAINT:**

Following the Court's grant, in part, of Defendants' Motion to Dismiss on April 19, 2011, the following claims remain:

 Counts I, V and IX – 4th Amendment, unreasonable search & seizure, All Plaintiffs as to Defendant Kovalovsky

Counts III, VIII and XII – State tort claim of Assault & Battery, All Plaintiffs as to Defendant Kovalovsky

Counts IV, VII and XI - Monell claims, All Plaintiffs as to Defendant Borough of Freemansburg

4

**IV.**          <u>**STANDARD OF REVIEW**</u>

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, depositions, Answers to Interrogatories, and admissions on file, together with the Affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56  Summary judgment may be granted if the moving party persuades the Court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. <u>Miller v. Ind. Hosp</u>., 843 F.2d 139, 143 (3d Cir. 1988).  An issue is "genuine" if a reasonable jury could possibly hold in the nonmoving party's favor with regard to that issue. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 249 (1986).  A fact is "material" only if it could affect the result of suit under governing law.  (Id.).  Furthermore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purpose of ruling on a motion for summary judgment." <u>Scott v Harris</u>, 127 S.Ct. 1769, 1776 (2007).

In evaluating a Motion for Summary Judgment, the Court must view the facts in the light most favorable to the nonmoving party and make reasonable inferences in that parties' favor. <u>Hugh v. Butler County Family YMCA</u>, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making all reasonable inferences in favor of the nonmoving party, the Court determines there is no genuine issue of material fact, summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." <u>Barwick v Celotex Corp</u>., 736 F.2d 946, 960 (4th Cir., 1984).  Courts within the Circuit have noted,

"…conflicts of credibility should not be resolved on summary judgment 'unless the opponent's evidence is too incredible to be believed by reasonable minds.'" <u>Grove v City of York</u>, 342 F. Supp. 2d 291, 309 (M.D. Pa. 2004)(internal citation omitted).  Such is the case here.

The party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record.  <u>Celotex</u>, 477 U.S. at 322-23.  "If the evidence is merely colorable, where it is not significantly probative, summary judgment may be granted."  <u>Anderson</u>, 477 U.S. at 249-50.  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."  <u>Walden v. St. Gobain Corp</u>., 323 F.Supp. 2d 637, 642 (E.D. Pa. 2004) (citing <u>Goodman v. Mead Johnson and Co</u>., 554 F2d, 566, 573 (3d Cir. 1976)).  "A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in [his] pleadings, but rather must present competent evidence from which a jury could reasonably find in [his] favor."  <u>Black v. City of Reading</u>, 2006 U.S. Dist. LEXIS 19014  (E.D. PA Apr. 7, 2006) citing: <u>Ridgewood Board of Education v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999); <u>Woods v. Bentsen</u>, 889 F. Supp. 179, 184 (E.D. Pa. 1995).

V.   **LEGAL ARGUMENT**

A.   **Plaintiff's Claims Are Time-Barred**

While a statute of limitations defense generally cannot be used prior to discovery in the context of a Rule 12(b)(6) Motion to Dismiss, an exception is made where the Complaint facially shows non-compliance with the limitations, and where the affirmative defense clearly appears on the face of the pleading.  <u>Oshiver v. Levin, Fishbein, Sedran and Berman</u>, 38 F.3d 1380, 1385

(3d Cir. 1994).  Such was not the case here, where discovery was necessary to establish the time bar.

While Plaintiffs originally pled that their stop by Officer Kovalovsky occurred on July 25, 2008, discovery has revealed that this claim is patently, and indisputably, false.  Officer Kevin Kovalovsky cited plaintiff Castro-Diaz for driving without a license on May 16, 2008.  As Castro-Diaz has sworn under oath that he was only stopped on only one occasion by Officer Kovalovsky, and that stop occurred more than two years before Plaintiffs filed a Writ of Summons[2] in state Court, their claims are time barred.

The United States Supreme Court, in <u>Wilson v. Garcia</u>, 105 S.Ct. 1938 (1985), held that, for purposes of the statute of limitations, actions under 42 U.S.C. §1983 are classified as claims for personal injuries.  The Court ruled that the state law statute of limitations for personal injury would therefore apply in §1983 claims.  (<u>Id</u>. at 1944-1947, 1949).

In <u>Kost v. Kozakiewicz</u>, 1 F.3d 176 (3d Cir. 1993), the Third Circuit Court of Appeals held that Pennsylvania's two year statute of limitations, codified at 42 Pa. C.S.§5524, applies to claims for violation of constitutional rights pursuant to 42 U.S.C. §1983.  (<u>Id</u>. at 189-190).  As discovery has borne out that any action that could have led to suit occurred on May 16, 2008, the statute of limitations for their claims, ran on May 16, 2010.  Further, it is Plaintiffs burden to show that they have complied with both Rule 4(m) and 15(c) of the Federal Rules of Civil Procedure.  <u>Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.</u>, 988 F.2d 476, 488 (3d Cir. 1993).  This, they cannot do.

---

[2] Plaintiff's filed a Writ of Summons in the Court of Common Pleas of Northampton County on June 25, 2008.

The Circuit Court has held that a Motion for Leave to file an Amended Complaint may be denied where there has been an undue delay on the part of the Plaintiff. Adams v. Gould, Inc., 729 F.2d 858, 864 (3d Cir. 1984).  F.R.C.P. 15(a).  The Plaintiff bears the burden of explaining the reason for the delay.  Freedom International Trucks, Inc. of New Jersey v. Eagle Enterprises, Inc., 182 F.R.D. 172, 174 (E.D. Pa. 1998).  Plaintiffs chose to sleep on their rights, and offer the Court no reason for the delay.  Having failed to file a Complaint or Writ of Summons within the two years permitted by the statute, Plaintiffs instead attempt to capitalize on the termination of Officer Kovalovsky, apparently unaware that he was no longer working as a police officer when their truck was towed in July of 2008.  Their claims are time-barred, and Defendants respectfully request that the Court so rule, addressing plaintiffs' claims individually, only in an abundance of caution.

### B.        Punitive Damages.

Punitive damages are not available against municipal entities and Defendants in their official capacities as a matter of law.  Under §1983, "in order to obtain such damages, a plaintiff must establish facts of record to prove that the individuals knowingly and maliciously deprived the plaintiff of his Civil Rights." Ruiz v. Philadelphia Housing Authority, 1998 U.S. Dist. Lexis 3925 (E. D. Pa. March 17, 1998).  Plaintiff has failed to plead evidence of "outrageous conduct" sufficient to support a punitive damage award against the individual Defendant, and no legal basis for punitives against the Borough.

The indisputable facts of record in this matter establish that Adalberto Castro-Diaz was driving his car 15 mph over the speed limit on a rainy day, and was stopped by Officer Kevin Kovalovsky.  Unable to produce a valid driver's license, a fact verified by the Commonwealth of

Pennsylvania, Castro-Diaz was cited by the officer.  He would later describe events of a sunny day in July, in which he claims he was run off the road by a police officer, despite the fact that police reports from the Bethlehem Police Department show that he was involved in an auto accident on June 6, 2008, causing damage to his truck.  There is no evidence of any outrageous conduct on the part of Officer Kovalovsky, or the Borough of Freemansburg for that matter, that would subject either to punitive damages, even if such damages were available against a municipality.  Defendants respectfully request that this claim for damages be stricken.

## C. Counts 1, 5 and 9 - Plaintiff's Claims Premised on a Lack of Probable Cause

Plaintiffs have brought Fourth Amendment claims under 42 U.S.C. § 1983 against all Defendants related to "an unreasonable search and seizure".  It is Plaintiff's contention that Officer Kovalovsky lacked probable cause to stop Adalberto Castro-Diaz.  (Exhibit "A").  While Plaintiff has successfully availed himself of the criminal justice system, that does not negate the probable cause that existed for stopping him.

Plaintiff cannot sustain claims premised on a lack of probable cause as a matter of law.  As the Pennsylvania Supreme Court has made clear, "an arrest based upon probable cause will be justified, regardless of whether the individual arrested was guilty or not." Renk v. City of Pittsburg, 537 Pa. 68, 76 (1994), citing: Fagan v. Pittsburg Terminal Coal Corp., 299 Pa. 109 (1930).  The Court went on to hold:

> "Probable cause exists when the facts and circumstances which are within the knowledge of the police officer at the time of arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect had committed, or is committing, a crime." Commonwealth v. Rodriguez, 526 Pa. 268, 273 (1991) (Citation omitted).

<u>Renk</u>, 537 Pa. at 76.  See also, <u>Paff v. Kaltenbach</u>, 204 F.3d 425, 433 (3d Cir. 2000).

Probable cause is a "fluid concept turning on the assessment of probabilities and particular factual context, not readily, or even usually, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983).

While probable cause requires more than a mere suspicion, the law recognizes that probable cause determinations do "not require the fine resolution of conflicting evidence that a reasonable doubt, or even a preponderance standard, demands." <u>Gerstein v. Pugh</u>, 420 U.S. 103, 121 (1975).  A commonsense approach must be taken to the issue of probable cause, and a determination as to its existence must be based on the totality of the circumstances.  <u>Sharrar v. Felsing</u>, 128 F.3d 810, 818 (3d Cir. 1997).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.

As the Supreme Court has held, "[p]erhaps the central teaching of our decisions bearing on the probable cause standard is that it is a 'practical, non-technical conception.'" <u>Illinois v. Gates</u>, 462 U.S. 213, 231 (1983).  The Court went on to hold that probable cause is a fluid concept "turning on the assessment of probabilities and particular factual context-not readily, or even usually, reduced to a neat set of legal rules." <u>Id</u>. at 232.  Of course, the outcome of prosecution on state charges is irrelevant to the determination of a 4th Amendment claim under § 1983. <u>Kis v. County of Schuylkill</u>, 866 F.Supp. 1462, 1469 (E.D. Pa. 1994).  The fact that

Vehicle Code charges against the Plaintiff were dismissed, therefore, need not be considered in determination of probable cause.

Discovery in this matter has revealed that not all is as Plaintiffs originally claimed in the Complaint.  It is evident that sufficient probable cause existed for Officer Kovalovsky to stop Adalberto Castro-Diaz on may 16, 2008.  The documentation in this matter reveals that Mr. Castro-Diaz was operating his car 15 mph over the speed limit, and did not possess a valid driver's license.  As such, it was completely appropriate for Officer Kovalovsky to stop him, and ultimately to issue him a traffic citation.  Mr. Castro-Diaz availed himself of the remedies available to him, and when Officer Kovalovsky failed to appear at the hearing, the ticket was dismissed.  He has been given all the process to which he was due, and the fact that he successfully fought the ticket, does not vitiate that probable cause that existed for the original stop.  Claims of an illegal search and seizure, which are also time-barred, should be dismissed on this factual basis as well.

### D.    Counts 3, 4, 7, 8, 11 and 12 - Excessive Force, Assault and Battery

Plaintiffs allege that the actions of Officer Kovalovsky amount to an excessive use of force, and that the Borough of Freemansburg is responsible under a Monell theory.  While Plaintiffs' claims are time-barred in any event, the facts of the May 16, 2008 car stop, the only such stop involving Adalberto Castro-Diaz and Kevin Kovalovsky, are addressed in an abundance of caution.

A police officer's determination of the appropriate level of force to use must be measured from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, supra, 490 U.S. at 396.  What is important is the amount and quality of the

information known to the officer at the time he used force when determining whether the officer

used an appropriate level of force.  Sherrod v. Berry, 856 F.2d 802, 804-805 (7th Cir. 1988) (en

banc).  In order to prevail on an excessive force claim, a Plaintiff must prove that the force used

against them was objectively unreasonable under the Fourth Amendment. See: Graham v

Connor, 490 U.S. 386, 388, 394 (1989)(explaining that "*all* claims that law enforcement officers

have used excessive force..in the course of an arrest, investigatory stop, or other 'seizure' of a

free citizen should be analyzed under the Fourth Amendment and its 'reasonableness'

standard")(emphasis in original).  Furthermore, the facts of the case must be viewed in proper

prospective-that is, from the point of view of the Officer on the scene- and not retrospectively:

> The reasonableness of a particular use of force must be judged
> from the prospective of a reasonable Officer on the scene, rather
> than the 20/20 vision of hindsight…with respect to a claim of
> excessive force, the same standard of reasonableness at the
> moment applies:
>
> Not every push or shove, even if it may later seem unnecessary in
> the peace of a Judge's Chambers…violates the Fourth Amendment.
> The calculus of reasonableness must embody allowance for the
> fact that Police Officers are often forced to make split second
> judgments-in circumstances that are tense, uncertain, and rapidly
> evolving about the amount of force that is necessary in a particular
> situation.

Graham, 490 U.S. 396-7 (internal citations omitted).

In Graham, the Supreme Court also noted that "Fourth Amendment jurisprudence has

long recognized that the right to make an arrest or investigatory stop necessarily carries with it

the right to use some degree of physical coercion of the threat thereof to affect it," Id. at 396.

Accordingly, when evaluating the reasonableness of a police officer's use of force, a court should

consider the specific circumstances of the case, such as "whether the suspect poses an immediate

threat to the safety of the officers or others." Id. at 396.  Also, "[i]f an officer reasonably, but

mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be

justified in using more force that in fact was needed." Saucier v Katz, 533 U.S. 194 (2001).

A claim of excessive force under the Fourth Amendment is examined by determining

whether, under the totality of the circumstances, "the Officers' actions are 'objectively reasonable'

in light of the facts and circumstances confronting them, without regard to their underlying intent

or motivations." Graham v. Connor, 490 U.S. 386, 397 (1989); Estate of Smith v. Morasco, 318

F.3d 497, 515 (3d Cir. 2003).  If a use of force is objectively reasonable, an Officer's bad faith

motivation is immaterial.  See, Abraham v. Raso, 183, F.3d 279, 289 (3d Cir. 1999).

Although "reasonableness under the Fourth Amendment should frequently remain a

question for the jury," Abraham, 183 F.3d at 290, "Defendants can still win on summary

judgment if the District Court concludes, after resolving all factual disputes in favor of the

Plaintiff, that the Officers' use of force was objectively reasonable under the circumstances," Id.,

quoting Scott v. Henrich, 39 F.3d 912, 915 (3d Cir. 1992).

As the Graham Court recognized:

> Our Fourth Amendment jurisprudence has long recognized that the
> right to make an arrest or investigatory stop necessarily carries
> with it the right to use some degree of physical coercion or threat
> thereof to effect it. See, Terry v. Ohio, 392 U.S. at 22-27.
> Because "[t]he test of reasonableness under the Fourth Amendment
> is not capable of precise definition or mechanical application,"
> Bell v. Wolfish, 441, U.S. 520, 559 (1979), however, its proper
> application requires careful attention to the facts and circumstances
> of each particular case…

Graham, 490 U.S. at 386.

The Third Circuit's opinion in <u>Sharrar v. Felsing</u>, 128 F. 3d 810 (3d Cir. 1996), is instructive.  Citing <u>Graham v. Connor</u>, 490 U.S. 386 (1989), the <u>Sharrar</u> Court reiterated that the standard in evaluating an excessive force claim is one of "objective reasonableness".  <u>Id</u>. at 820 <u>citing</u>: <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989).  It is apparent that Officer Kovalovsky had a fairly routine stop of Adalberto Castro-Diaz and his female companion, and issued the traffic citation, without any use of force in this matter.  Plaintiffs' tall tale of guns being pointed, and being forced off the road, are offered no evidentiary support, and are clearly a fabrication on the part of the Plaintiffs.  Claims for excessive force should be dismissed on this factual and legal basis, even beyond the consideration of Plaintiffs' claims being time-barred.

The actions of Officer Kovalovsky in this case are given further support under state law. 18 Pa. C.S. § 508 provides:

§ 508.  Use of force in law enforcement

 (a) PEACE OFFICER'S USE OF FORCE IN MAKING ARREST.--

  (1) A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other person, or when he believes both that:

   (i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and

   (ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly

> weapon, or otherwise indicates that he will endanger human life or
> inflict serious bodily injury unless arrested without delay.

The actions of Officer Kovalovsky comport with state law as well, as he used minimal force in stopping the plaintiff, and citing him for driving without a license.  With discovery complete, it is apparent that Officer Kovalovsky complied with both the state and federal law in this regard.

Plaintiffs' claim at Counts 3, 8 and 12, that the actions of Officer Kovalovsky amount to assault and battery.  While the analysis immediately above is equally applicable to this claim, defendants address this state tort claim, briefly.

In <u>Renk v. City of Pittsburgh</u>, 537 Pa. 68 (1994), the Court recognized that Police Officers, in the execution of their duties, must utilize a certain amount of force at times:

> The Police Officer may use reasonable force to present
> interference with the exercise of his authority, or the performance
> of his duty.  In making a lawful arrest, a Police Officer may use
> such force as is necessary under the circumstances to effectuate the
> arrest.  The reasonableness of the force used in making the arrest
> determines whether the Police Officer's conduct constitutes an
> assault and battery.

<u>Renk</u>, 537 Pa. at 76.

The inquiry turns on whether the conduct alleged is willful misconduct.  As the <u>Renk</u> Court pointed out, an Officer who intends to use force which turns out to be excessive, does not commit willful misconduct, where an Officer who intentionally uses excessive force that does not result in harm, does commit willful misconduct.  <u>Renk</u>, 641 A.2d at 293-94.  While Plaintiffs' unsupported allegations were sufficient to overcome their rudimentary pleading burden, they have developed no support in discovery, beyond the self-serving accusations of the Complaint, grossly insufficient to meet her burden under Rule 56.  <u>Black v. City of Reading</u>,

2006 U.S. Dist. LEXIS 19014  (E.D. PA Apr. 7, 2006) <u>citing</u>: <u>Ridgewood Board of Education v.</u>

<u>N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999); <u>Woods v. Bentsen</u>, 889 F. Supp. 179, 184 (E.D.

Pa. 1995).

      Plaintiffs' burden was clear, to establish "willful misconduct" on the part of the

defendant, namely: "mean[ing] that an officer acted with the knowledge that his conduct was

unlawful and with the purpose of achieving an unlawful result. *See Owens v City of*

*Philadelphia*, 6 F.Supp. 2d 373, 394 (E.D. Pa. 1998)" <u>Sullivan v Warminster</u>, 765 F.Supp2d

687, 707 (E.D. Pa. 2011).  Further:  "[b]ecause a 'police officer may use such force as is

necessary under the circumstances to effectuate' an arrest, in the context of allegations of assault

and battery the 'reasonableness of the force used in making the arrest determines whether the

police officer's conduct constitutes an assault and battery.' <u>Renk</u>, 641 A.2d at 293; <u>see also:</u>

<u>Sharrar v Felsing</u>, 128 F.3d 810, 821-22 (3rd Cir, 1997)…" <u>Id</u>. at 13.  Plaintiffs have failed to

meet their burden, and their assault and battery claims should be dismissed with prejudice.

      **E.**      **<u>Supervisory Liability under the Fourth Amendment (Borough)</u>**

      It is well-settled that if there is no constitutional violation in the first place, there can be

no supervisory liability.  <u>Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986).  As plaintiffs have

established no conduct by Officer Kovalovsky himself that could be said to have violated a

constitutional right of the plaintiff, liability may not attach to his employer, the Borough of

Freemansburg.  Such a defendant can only be held liable if it knew a subordinate's actions had

violated the plaintiff's constitutional rights or the Borough itself violated the plaintiff's rights.  <u>St.</u>

<u>Louis v. Paprotnik</u>, 45 U.S. 112 (1988), "[T]his necessary involvement can be established in

either of two ways:  through allegations of personal direction or actual knowledge and

acquiescence with proof of direct [violation] by the supervisor."  Kis v. County of Schuylkill,

866 F. Supp. 1462, 1474 (E.D., Pa. 1994); Rode v. Dellarciprete, 845 F. 2d 1195, 1207 (3d Cir.,

1988).

The Kis Court explained that "[t]o hold a supervisory official liable, then, the plaintiff

must:

> 1.  Identify with particularity what the supervisory official failed to
> do that demonstrates 'deliberate indifference'; and
>
> 2.  Demonstrate a causal relationship between the identified
> deficiency and ultimate [constitutional] injury."

Id. at 1474.  See also, Sample v. Deicks, 855 F.2d 1099, 1118 (3d Cir., 1989).

Further, the United States Supreme Court has recently made it clear that supervisory

liability claims require more than the tenuous arguments thus far offered by Plaintiff:

> [Respondent] argues that, under a theory of "supervisory liability,"
> petitioners can be liable for "knowledge and acquiescence in their
> subordinates' use of discriminatory criteria to make classification
> decisions among detainees."  Iqbal Brief 45-46.  That is to say,
> respondent believes a supervisor's mere knowledge of his
> subordinate's discriminatory purpose amounts to the supervisor's
> violating the Constitution.  We reject this argument.  Respondent's
> conception of "supervisory liability" is inconsistent with his
> accurate stipulation that petitioners may not be held accountable
> for the misdeeds of their agents**.  In a § 1983 suit or a Bivens
> action--where masters do not answer for the torts of their
> servants--the term "supervisory liability" is a misnomer.
> Absent vicarious liability, each Government official, his or her
> title notwithstanding, is only liable for his or her own
> misconduct.**  In the context of determining whether there is a
> violation of clearly established right to overcome qualified
> immunity, purpose rather than knowledge is required to impose
> Bivens liability on the subordinate for unconstitutional
> discrimination; the same holds true for an official charged with
> violations arising from his or her superintendent responsibilities.

17

<u>Ashcroft v Iqbal</u>, 129 S.Ct. 1937, 1949 (2009)(emphasis added).  The Third Circuit has, of course, followed the direction provided by the Supreme Court:

> Where, as here, an operation results in the use of allegedly excessive force against only one of several people, that use of force does not, by itself, give rise to a plausible claim for supervisory liability against those who planned the operation. To hold otherwise would allow a plaintiff to pursue a supervisory liability claim anytime a planned operation resulted in excessive force, merely by describing the force used and appending the phrase "and the Chief told them to do it." <u>Iqbal</u> requires more.

<u>Santiago v Warminster</u>, 2010 U.S. App. LEXIS 25414, at *27 (E.D. Pa. Dec. 14, 2010). The Court left for another day, the question as to whether there exists any plausible supervisory liability claim in light of <u>Iqbal</u>.  <u>Id</u>, at *19.  The Court need not test the theory, however, as Plaintiff has failed to establish any action by the Borough, or Chief of Police, that would subject them to supervisory liability.

### F.   <u>Counts 4, 7 and 9 – Monell Claim (Borough of Freemansburg)</u>

In order to establish a §1983 action, a plaintiff must show that a "person" acted under color of state law to cause a deprivation of a legally protected liberty or property interest protected by the United States Constitution.  <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991).  It is well established that in a §1983 lawsuit, the defendant must have personal involvement in the alleged wrongs as liability cannot be based solely on the doctrines of agency or respondeat superior. <u>Parratt v. Taylor</u>,  451 U.S. 527, 537 n.3 (1981); <u>Berg v. County of Allegheny</u>,  219 F.3d 261, 275 (3d Cir. 2000), cert. denied, 531 U.S. 1072 (2001).  A governmental entity does **not** have *respondeat superior* liability for acts or omissions of its employees:

> **A municipality cannot be responsible for damages under section 1983 on a vicarious liability theory**, <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694-95 (1978), and "can be found liable

18

under § 1983 only where the municipality *itself* causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (emphasis in original).  Accordingly, in order to establish a §1983 claim against a municipal entity, a complainant "must demonstrate that the violation of his rights was caused by either a policy or custom of the municipality." Berg, 219 F.3d at 275.  In Berg, the Third Circuit Court of Appeals explained:

> Policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action, issues an official proclamation, policy, or edict. . . Customs are practices of state officials so permanent and well settled as to virtually constitute law.

Berg, 219 F.3d at 275.  If a plaintiff can establish and identify a municipal policy or custom in a § 1983 action, he must then demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury.  Berg, 219 F.3d at 276.  A municipality can be held liable under §1983 only if plaintiff shows that the actions that were violative of their Civil Rights, implemented a policy, ordinance or custom of the local government or were committed by an  official high enough in government so that the actions can fairly be said to represent a government decision.  Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).

Plaintiff must provide evidence that the government unit itself supported a violation of plaintiff's constitutional rights.  Bielevich v. Dubinon, 915 F.2d 845, 850 (3rd Cir. 1990);  Monell 436 U.S. at 695.  The United States Supreme Court in Monell held that a Civil Rights Complaint against a  municipality or its agency must establish:

      1.  The existence of a custom or a policy of the municipality, which is of such long standing to have the force of law; and

      2.  That one of the municipality's employees violated the plaintiff's Civil Rights while acting pursuant to this custom or policy.

Id.

Municipalities do not cause constitutional deprivations merely by hiring alleged tortfeasors.  Rather, the complained of injury must be causally linked to a custom or policy of a municipality pursuant to which an employee was acting.  Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996).

Plaintiff must also prove a causal link between the alleged custom or policy and the alleged §1983 violation, and concomitant harm.  In short, "a municipality can be liable under §1983 only where its policies are the 'moving force behind the violation.'"  City of Canton v. Harris, 489 U.S. 379, 386 (1989) (quoting Monell, 436 U.S. at 694).

Plaintiffs have identified no such custom, practice or policy, much less met their heavy burden at this stage of the proceedings, to survive a motion for summary judgment.  Discovery proves that the individual defendant did not commit a constitutional violation, and that the policies of the Borough are constitutionally sound.  It is Plaintiffs burden to establish both a constitutional violation, and a particular custom, practice or policy that was the driving force behind the violation.  Having utterly failed to develop such a claim, Plaintiffs Monell claims should be dismissed.

Further, to the extent plaintiff's claims can be construed as claims of failure to train, discipline and supervise, they fail, as well. The Court of Appeals for the Third Circuit has long held that "a failure to train, discipline or control can only form the basis for §1983 municipal

liability if the plaintiff can show both contemporaneous knowledge of the offending incident, or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. DeSimone, 159 F.3d 120, 127 (3d Cir., 1998); Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir., 1997); Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir., 1988).  More specifically, a plaintiff "must show that a 'reasonable municipal policymaker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question.'" Cacciatore v. City of Philadelphia, 2005 U.S. Dist. Lexis 19064, *1, *6 (E.D. Pa., Sept. 1, 2005) (quoting, Garcia v. County of Bucks, 155 F. Supp. 2nd 259, 268 (E.D. Pa., 2001)); Strauss v. Walsh, 2002 U.S. Dist. Lexis 24717, *1, *10 (E.D. Pa. Dec. 18, 2002); Altieri v. Pennsylvania State Police, 2000 U.S. Dist. Lexis 5041, *1, *39-40 (E.D. Pa., April 20, 2000).

In Pennsylvania, Officer Training is governed by state law.  All persons employed as Police Officers in the Commonwealth must be certified by MPOETC.  See, 53 Pa. C.S. §2161 et seq., see also, Colbert v. Angstad, 169 F. Supp. 2d 352, 358 Note 9 (E.D. Pa.,  2001).  As a requirement for continued certification, all police officers must receive both basic training (i.e., Act 120 Training) and annual training (i.e., Act 180 Training).  Id.

Numerous Courts have held that where a state imposes training standards, evidence showing adherence to those standards bars any finding that the police department was deliberately indifferent to the need for additional training.  See, Tapia v. City of Greenwood, 965 F.2d 336, 339 (7th Cir., 1992); Ross v. Town of Austin, 2002 W.L. 31160139, at *9 (S.D. IN,

Sept. 23, 2002); <u>Johnson v. City of Milwaukee</u>, 41 F. Supp. 2d 917, 931 (E.D. WIS, Feb. 25,

1999); <u>Williams v. Musser</u>, 1997 Westlaw 403509, at *10 (N.D. IL, July 16, 1997).

      For example, in <u>Carswell,</u> the Third Circuit found that the plaintiff failed to establish

deliberate indifference or causation where the Police Chief "testified that Officers attend annual

in-service courses, where they study, among other subjects, relevant Court Opinions" and he

"updated the [Police Manual]… and directed his officers to become familiar with the updated

Policy Manual, which covered the 'Continuum of Force.'"  The Court explained that "[t]his

evidence did not establish a lack of training on the use of deadly force that amounted to a

deliberate indifference, nor does it demonstrate a pattern of underlying constitutional violations

that should have alerted [the municipality] to an inadequate training program." <u>Id</u>. at 245.  Thus,

the Third Circuit held that the plaintiff failed to "meet the high burden of proving deliberate

indifference." <u>Id</u>.  Likewise, in <u>Tapia</u>, Police Officers conducted a warrantless search of the

plaintiff's home.  Following the search, the plaintiff commenced an action against the police

department, alleging that it failed to train its officers with regard to such searches.  At the end of

Trial, the jury returned a verdict against the defendant.  On Appeal, the police department argued

that the evidence was insufficient to establish the City had a constitutionally deficient program of

training its officers, because the training complied with the minimum standards under state law.

The Seventh Circuit agreed, explaining as follows:

> In Indiana, police officer training is governed by state law.  Ms.
> Tapia offered no evidence to indicate that the city failed to adhere
> to the minimum standards for training police officers under Indiana
> law…From this evidence, we cannot say that "the need for
> enhanced training [was] so obvious and the inadequacy of training
> [was] so likely to result in the violation of constitutional rights, that
> the jury could reasonably attribute to the policymakers, a deliberate
> indifference to those training needs."

Id.  (Citation omitted).

In the matter at bar, to the extent Plaintiff has alleged that Freemansburg Borough engaged in a failure to train, discipline or supervise, without identifying any specific area where the municipality is deficient, or a direct act that should amount to liability for failure to discipline or train, their claims fail.

### G.    Officer Kovalovsky Is Entitled to Qualified Immunity

A clear record has now been developed through discovery, and the issue of Officer Kovalovsky's entitlement to qualified immunity is ripe for the Court's determination.  Kevin Kovalovsky is entitled to qualified immunity.  The United States Supreme Court has held that qualified immunity serves to "insulate government officials from liability for assumable damages when the discretionary conduct of that official did not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The standard for applying qualified immunity is an objective one. The Supreme Court has instructed that the inquiry must focus on the "objective reasonableness of an official's conduct as measured by reference to clearly established law."  (Id.).

The Court further explained, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say official action is protected by qualified immunity unless the very action in question has been declared unlawful, but it is to say that the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635 (1982).

Qualified immunity is an immunity from suit, and not a mere defense to liability.  As a general rule, the issue of whether an official is entitled to qualified immunity should be

determined prior to trial, as the purpose of qualified immunity is to protect officials and public employees from undergoing the burdens of litigation.  Mitchell v. Forsythe, 472 U.S. 511 (1985).

In Hunter v. Bryant, 112 S. Ct. 534 (1991), the Supreme Court recognized that "the qualified immunity standard gives ample room for mistakes of judgment in protecting all but the plainly incompetent or those who knowingly violate the law.  This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued."  Id. at 137. The question of whether an official is entitled to qualified immunity is not limited solely to determining whether the official violated clearly established law.  The United States Supreme Court has repeatedly instructed that an official can be entitled to qualified immunity if that official violated clearly established law, but the violation was "objectively reasonable" based upon the information in this possession at the time of the conduct of which plaintiff complained.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court explained why a court must conduct an additional level of analysis in determining whether an officer is entitled to qualified immunity:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here, excessive force, will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts, but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.  If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the qualified immunity defense.

<u>Saucier</u>, 533 U.S. at 205.  If an officer did violate a clearly established right, the court must determine whether the officer "made a reasonable mistake as to what the law requires." <u>Carswell</u>, 381 F. 3d. at 242.

Further, the Supreme Court has held that the two step <u>Saucier</u> procedure is no longer mandatory:

> On reconsidering the procedure required in <u>Saucier</u>, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeal should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

<u>Pearson v. Callahan</u>, 2009 U.S. LEXIS 591, at *33 (U.S. Jan. 21, 2009).

The Court is therefore free to proceed under either of the <u>Saucier</u> steps, first, in determining whether the individual defendants are entitled to qualified immunity.

The indisputable evidence makes it clear that Officer Kovalovsky acted reasonably, lawfully, and appropriately at all times.  It would not be clear to a reasonable officer in his position, that anything that he did amounts to a constitutional harm.  While it is Defendants' position that no such harm has taken place, even were the Court to so find, Officer Kovalovsky acted consistent with his training, and the policies of their department.  It would be unreasonable to expect officers in the position of Officer Kovalovsky to act other than in the manner he did.  It would be unfair to expect officers in this position to act contrary to their policies and training, and use a different level of force than that which Kovalovsky used here.  He respectfully requests that the Court so rule, and recognize his qualified immunity in this case.

WHEREFORE, for the reasons stated herein, Plaintiff's Complaint, should be dismissed with prejudice.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:   s/Christopher Boyle, Sr.
CHRISTOPHER BOYLE, SR., ESQUIRE
ID#  PA93002
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8476 Fax (610) 354-8299
Email:  cpboyle@mdwcg.com
Attorney for Defendants

DATE:  3-13-12
26/1810942.v1

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ADALBERTO CASTRO-DIAZ and | : Civil Action No.  11-00181 |
| AMPARO HERNANDEZ and NEBREYLKA | : |
| CASTRO, a Minor by her Parents and Natural | : |
| Guardians, ADALBERTO CASTRO-DIAZ | : |
| And AMPARO HERNANDEZ | : |
| | : |
| vs. | : |
| | : |
| KEVIN KOVALOVSKY and BOROUGH | : |
| OF FREEMANSBURG | : |

**<u>CERTIFICATE OF SERVICE</u>**

I, CHRISTOPHER BOYLE, SR., ESQUIRE, being duly sworn according to law, hereby certify that Defendant's Motion for Summary Judgment was forwarded to all counsel of record on March 13, 2012 and was sent via first class mail, postage prepaid to the last known address of other parties or their representatives.

Adalberto Castro-Diaz
1212 Hilton Street
Bethlehem, Northampton County, PA 18018

     MARSHALL, DENNEHEY, WARNER,
     COLEMAN & GOGGIN


   BY: <u>s/Christopher Boyle, Sr.</u>
      CHRISTOPHER BOYLE, SR., ESQUIRE
      ID#  PA93002
      620 Freedom Business Center, Suite 300
      King of Prussia, PA 19406
      (610) 354-8476 Fax (610) 354-8299
      Email:  cpboyle@mdwcg.com
      Attorney for Defendants